

# NUMBER 13-20-00508-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN RE ERICA NICOLE MINSCHKE

## On Petition for Writ of Mandamus.

## MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Longoria and Tijerina
### Memorandum Opinion by Justice Longoria[1]

By petition for writ of mandamus, relator Erica Nicole Minschke seeks to compel the trial court to: (1) grant her motion to dismiss based on forum non conveniens because Texas provides an inconvenient forum, and thus a child custody proceeding regarding her minor child, A.N.G., should proceed in Florida rather than Texas; and (2) vacate its order giving possession of A.N.G. to the child's paternal grandmother, Sonia S. Gonzales,

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so," but "[w]hen granting relief, the court must hand down an opinion as in any other case"); *id.* R. 47.4 (distinguishing opinions and memorandum opinions).

because relator received inadequate notice of an enforcement hearing.[2] *See* TEX. FAM. CODE ANN. § 152.207(c) ("If a court of this state determines that it is an inconvenient forum and that a court of another state is a more appropriate forum, the court shall stay the proceedings upon condition that a child custody proceeding be promptly commenced in another designated state . . . ."); *id.* § 157.062 (requiring specific forms of notice for enforcement hearings). We conditionally grant relator's petition for writ of mandamus.

## I.    BACKGROUND

On May 6, 2020, Sonia filed an original petition in a suit affecting the parent child relationship in Kleberg County, Texas, alleging that she had exercised "actual possession and control of [A.N.G.] since June 1, 2019." The petition states that A.N.G. was born on November 20, 2012, and identifies the respondent as Sonia's son and A.N.G.'s father, Crispin Gonzales IV. Sonia's original petition requested the trial court to, inter alia, appoint Sonia, relator, and Crispin as joint managing conservators; to designate Sonia as the conservator with the exclusive right to designate A.N.G.'s primary residence; to limit the residence of A.N.G. to Kleberg County and contiguous counties; and to award Sonia the exclusive right to enroll A.N.G. in school. Sonia's original petition was supported by her May 6, 2020 affidavit stating, in relevant part:

> [A.N.G.] has been in my physical care and possession since June 1, 2019. Her father signed an Authorization Agreement for Voluntary Caregiver, so I was able to enroll her at Jubilee Academy for the school year 2019-2020. During the past eleven months I have provided for [A.N.G.'s] physical and emotional needs. While providing food, shelter, clothing, medical care, loving support, and guidance. [sic]

---

[2] This original proceeding arises from trial court cause number 20-171-C in the County Court at Law of Kleberg County, Texas, and the respondent is the Honorable Jaime Carrillo. *See id.* R. 52.2.

I have the ability to drop her off and pick her up at school or aftercare. Her educational needs are being met with perfect attendance[,] and [she] excels in school as evidence[d] in her school grades.

Her father works in Pennsylvania 14 days on and 14 days off. He exercises possession of her on his days off. Her mother[, relator] lives in Jacksonville, Florida. On May 30, 2019[,] I went to Florida and picked [A.N.G.] up for the summer with the understanding that her mother would be moving to Texas before the beginning of the school year. On or about June 2, 2019[,] I was advised by [relator] that she would not be moving to Texas as intended but that [A.N.G.] may remain here in Texas and could start school here until she moved here at a later date, or before the end of the year. [Relator] has electronic communication with [A.N.G.] anytime she wants to supplement her periods of possession.

During the past eleven months, [A.N.G.] has adapted well with her surrounding environment and extended family here in Texas. [A.N.G.] loves it here and is expecting to possibly visit Florida for the summer and return before the new school year. Removing [A.N.G.] from her present environment would not be in [her] best interest but would affect her physical and emotional well-being.

On August 25, 2020, relator filed a verified "Special Appearance, Plea to the Jurisdiction, Request to Decline Jurisdiction, and Original Answer." She asserted that the trial court lacked jurisdiction over her because she resided in Florida, and that Texas lacked subject matter jurisdiction over the case under Texas Family Code § 152.201 because Florida was the "home state" of A.N.G.:

4.     The "home state" of the child the subject of this suit is in Florida. The child's parents entered into an informal co-parenting agreement, in which [relator] allowed [Crispin], [A.N.G.'s] putative father, to have temporary possession of the child for one school term. The parties understood and agreed that at the conclusion of the school year, the child would be promptly returned to [relator] in Florida. During the time that the child was staying with her putative father, she was bounced around from home to home and eventually began living with an uncle in February of 2020. The mere presence of the child in Texas was a temporary arrangement and all parties agreed and understood that the child would be returned to [relator] at the conclusion of the school year, and the child was returned as agreed

3

on May 19, 2020. Since that time, the child [who is] the subject of this suit has been living in Florida with [relator].

In connection with her jurisdictional argument, relator also assailed Sonia's standing to bring suit on grounds that she did not have possession of the child for at least six months.[3] Relator further asserted, alternatively, that the trial court should decline to exercise jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) because the Texas forum was inconvenient, and Florida constituted a more appropriate forum:

> 11. Here, the Court should decline jurisdiction over this child custody proceeding because an application of the factors enumerated under [§] 152.207 of the Texas Family Code, demonstrate[s] that Florida is the more appropriate forum. As detailed in the Affidavit of [relator], neither of the child's parents presently reside or have past contact with Texas. [Relator] has resided with [A.N.G.] in Florida since 2015, and her putative father, [Crispin], presently works and lives primarily in Pennsylvania. [Crispin] has had past contacts with Florida and is subject to the jurisdiction of the Florida courts. [Crispin] and [Sonia] were both in Florida as recently as August 8, 2020. [Crispin] and [Sonia] were in Florida for purposes of harassing [relator] and Florida law enforcement had to be called to respond to the incident. The Florida police records and officers that witnessed the encounter are in Florida. Further, there [have] been past instances of domestic abuse by [Crispin], as described by the affidavit of [relator]. The concern in this case is that [Crispin] and [Sonia] could again engage in behavior to disrupt the peace of [relator] and [A.N.G.]. Florida would be the state in the best position to protect the parties[] based on their past contact with that state. Additionally, and as referenced herein, there is presently a pending lawsuit between [Crispin] and [relator] in Jacksonville, Florida, and the court hearing the matter has jurisdiction and the ability to enter appropriate orders concerning the conduct of the parties. Florida and its courts are the appropriate forum with regard to protecting the parties as described by TEX. FAM. CODE [ANN.] § 152.207(b)(1). . . .

---

[3] Relator does not address or assail Sonia's standing to maintain suit in this original proceeding. *See*, *e.g.*, *In re H.S.*, 550 S.W.3d 151, 155 (Tex. 2018). Accordingly, we do not address this issue here.

12. [A.N.G.] was conceived and born in the State of Virginia. [A.N.G.] has always lived primarily with her mother, [relator]. [Relator] raised [A.N.G.] since the time the child was born November 20, 2012 to the present. [Relator] and [A.N.G.] resided in Virginia together from November 20, 2012 to April 2015. Thereafter, [relator] moved with [A.N.G.] to Florida to be closer to [relator's] immediate and extended family and friends. [Relator] and [A.N.G.] have resided together in Florida since moving there back in April of 2015. [A.N.G.] was merely present in Texas pursuant to an agreement between the parties whereby it was understood and agreed that [A.N.G.] would remain with [Crispin] for the duration of one school year. [Relator] agreed to allow [A.N.G.] to stay with [Crispin] to make up for lost time when he was not involved in [A.N.G.'s] life. [A.N.G.] has resided outside of Texas her entire life and was merely present in Texas due to this temporary possession arrangement. Here, the length of time that [A.N.G.] has resided outside of Texas demonstrates that Florida is the appropriate forum for this proceeding. TEX. FAM. CODE [ANN.] § 152.207(b)(2) (the court must consider the . . . time the child resided outside Texas when determining whether another court is a more appropriate forum). The duration in which [A.N.G.] has resided outside of Texas in this case supports the decision that it is appropriate that this Court decline jurisdiction based inconvenient forum. *Id.* . . .

13. Further, Florida is a more appropriate forum in this Case because the parties and the child the subject of the suit reside in or are closer to Florida. The evidence and testimony regarding the growth, historical development and parental needs and relationship with the child exists almost entirely in the State of Florida. [Relator] and [A.N.G.] have lived together in Florida since April 2015. [Crispin] presently works and lives in Pennsylvania. The distance between each forum state further demonstrates how Florida would be the more appropriate forum. Further, as discussed in the Affidavit of [relator], litigating and eventually trying this matter before jury would cause her to incur undue financial hardship in traveling to and from Texas and would disrupt [A.N.G.]'s daily life and routine, which would not be in her best interest and would unfairly prevent [relator] from adjudicating these claims. The relevant distance and evidence in this proceeding demonstrates that Florida is a more appropriate forum for this case. TEX. FAM. CODE [ANN.] § 152.2(07(b)(3). . . .

14. Moreover, [relator's] present financial circumstances prevent her from fairly litigating these claims in Texas. [Crispin], including as evidenced by his recent trips to Florida and being represented by counsel in the parties' Florida lawsuit, is not faced with these same

limitations. Accordingly, Florida would be the appropriate forum for a full and fair litigation of these claims. TEX. FAM. CODE [ANN.] § 152.2(07(b)(4). . . .

15. Further, discussed herein and in the attached affidavit of [relator], the parties agreed that the child would continue to reside in Florida. The child's home state was always Florida, and the parties agreed that [A.N.G.'s] time with [Crispin] was temporary. The nature of the parties' agreement demonstrates, among other things, that the parties agreed that the child would remain subject to the laws of Florida. TEX. FAM. CODE [ANN.] § 152.207(b)(5). . . .

16. Further, all the evidence that has accumulated over the course of [A.N.G.'s] life is in Florida. TEX. FAM. CODE [ANN.] § 152.207(b)(6). Florida has been [A.N.G.'s] home since April 2015, and since that time, [relator] and [A.N.G.] have had substantial contacts with that state and its resident witnesses. [Relator] and [A.N.G.'s] past history and connection to Florida, its institutions, and residents is detailed at length in the attached Affidavit of [relator], which is incorporated by reference if fully set forth herein. Florida is the primary location for witness testimony and documentary evidence regarding the relevant issues at dispute in the lawsuit. . . .

17. Florida is also the state that has the ability to decide contested issues, quickly, including but not limited to matters pertaining to the unanswered issue of paternity, and a Florida circuit court has assumed jurisdiction this matter. [Crispin] has entered an uncontroverted appearance in that lawsuit, has sought relief from the court and is actively litigating that Florida lawsuit. TEX. FAM. CODE [ANN.] § 152.207(b)(7). Moreover, the Florida courts are familiar with the issues at dispute and there is an existing lawsuit that has been filed to address these matters. There has been considerable litigation in the Florida proceeding, and the Florida court. has extensive knowledge with respect to the parties and issues in dispute. TEX. FAM. CODE [ANN.] § 152.207(b)(8). . . .

18. Texas is an inconvenient forum to make a custody determination under the circumstances in this case, and Florida is a more appropriate forum for this custody determination. . . .

Relator supported this pleading with an affidavit in support of the foregoing assertions. She averred, among other things, that she is a resident of Florida, and Crispin

6

is the child's "putative" father. She stated that A.N.G. was born in Virginia in 2012. She testified that she was in a "dating relationship" with Crispin, the relationship was "dysfunctional," Crispin "had not revealed that he was married," and that "there were several instances of family violence and domestic abuse" perpetrated against her by Crispin. She testified that neither she, nor Crispin, nor A.N.G. had "any connections" with Texas during this time. She stated that her relationship with Crispin during this period was "on again off again," and "he chose to remain absent" from A.N.G.'s life.

Relator testified that A.N.G. lived with her in Virginia until they moved to Florida in approximately April 2015. She stated that she moved to Florida to be closer to her family and that she served as A.N.G.'s "sole and primary" caregiver in Florida. She stated that there were several witnesses who could testify regarding her relationship with A.N.G. who all reside in Florida and many of them would be testifying at the court proceeding in Florida. Relator testified that she and A.N.G. resided with her mother in Florida until they obtained separate housing in April 2017. Relator testified that A.N.G. resided with her in Florida "from April 2015 to the present." In Florida, A.N.G. attended church and school, was "presently enrolled" as a second grader, and engaged in various extracurricular activities such as cheerleading and gymnastics. Relator testified that she was exclusively responsible for A.N.G.'s healthcare needs and that all of A.N.G.'s doctors and healthcare providers were in Florida.

Relator stated that Crispin presently lives and works in Pennsylvania. She testified as follows regarding A.N.G.'s relationship with Crispin:

> [A.N.G.] has had minimal contact with [Crispin] and his family. I have traditionally encouraged a healthy relationship between [A.N.G.] and her putative father, and in 2017, I started to allow [A.N.G.] to visit with [Crispin]

7

during the summer months. But, [A.N.G.'s] primary residence has always remained with me, and I have never lived nor resided in Texas. In September 2018, I agreed to allow [A.N.G.] to attend school for one year while staying with [Crispin]. The arrangement was temporary and was only supposed to last one school year. I only agreed to the arrangement because the understanding was that the stay would only be temporary, and the arrangement would . . . help make up for lost time when [Crispin] was not around when [A.N.G.] was younger. [Crispin] agreed I would always remain in continued contact with [A.N.G.] and would maintain control over her care. . . . We agreed that Florida would remain [A.N.G.'s] home state and . . . the parties understood that [A.N.G.] would just be allowed to stay with [Crispin] for one school year. The parties were also aware that I reserved the right to have [A.N.G.] returned to me in the event the arrangement was not serving her best interest. . . .

Relator supported this affidavit testimony with copies of text messages between Crispin, Sonia, and herself. She stated that she had "serious concerns" about A.N.G.'s care in Texas because "there was a complete lack of . . . stability," and A.N.G. was "bouncing around" and living with various relatives of Crispin's while she was in Texas. According to relator, the last relative that A.N.G. stayed with in Texas was A.N.G.'s putative uncle, Mario Serrano. According to relator, and some text messages, Serrano's girlfriend shared relator's concerns about the stability of A.N.G.'s housing in Texas. Relator testified that A.N.G. was in Serrano's "primary care from approximately February 2020 to May 19, 2020, which is the ninety-day period immediately preceding the filing of this lawsuit."

Relator further testified that she was "blindsided" by Sonia's lawsuit. Relator stated that she picked A.N.G. up in Texas on May 19, 2020, returned to Florida with her, and was served with Sonia's lawsuit in Florida on May 22, 2020. She asserted that there "is an existing conservatorship suit with respect to [A.N.G.] in Florida" which "will include genetic testing for paternity and an adjudication of conservatorship between the parents," and "all witnesses and evidence pertaining to [A.N.G.'s] upbringing reside . . . in Florida."

She asserted that Crispin and Sonia drove to Florida on August 7, 2020 and "created a conflict" in which "Florida law enforcement had to be called."

On September 18, 2020, relator filed a "Brief in Support of Declining Jurisdiction on Basis of Forum Non Conveniens." She asked the Texas court to decline jurisdiction over the case. She discussed the statutory factors under § 152.207 in connection with the evidence she had previously provided the court and provided additional evidence in support of her allegations. By affidavit, she testified that Crispin was employed in the oil and gas industry where he was "well paid," and that he was also working a secondary job as a personal trainer. She testified that Sonia worked as a legal assistant for opposing counsel. She testified that Sonia and Crispin had the financial ability to travel to Florida for litigation, but she did not have the same ability to travel to Texas. She testified she had recently lost her job, was unemployed, and was not paid any financial support for A.N.G. She expressly testified that she did not have the financial means to participate in a child custody dispute in Texas and the "costs associated with travel and other expenses would be unduly burdensome and would prevent her from fairly litigating the issues at dispute." She stated that litigating in Texas would prevent her from calling Florida-based witnesses who have personal knowledge of the relevant issues, including A.N.G.'s educators, physicians, and therapist. She expressly testified that these witnesses would be testifying in the Florida proceeding but would not be able to participate in Texas litigation.[4]

---

[4] Relator also testified that Crispin signed and notarized a power of attorney "granting [her] his parental rights to [A.N.G.]." The power of attorney in the record is dated June 2, 2015 and expires, by its terms, one year later. The power of attorney does not relinquish Crispin's parental rights but instead gives relator the power to take and maintain custody of A.N.G. for the stated period. Given its duration and content, we do not consider this relevant to our determination here.

9

Relator testified that Crispin committed emotional abuse and physical violence against her, and that he "gets very violent, especially when he drinks." She testified regarding one incident when he pushed her against a wall and began choking her. She testified he became increasingly violent, with arguments and more physical abuse, and that on several occasions he hit her with objects including lamps and phones. She testified that Crispin physically attacked her at least five separate times and that she "was afraid for [her] safety and the safety of [her] daughter." She testified she had limited contact with Crispin after leaving Virginia but still feared for her safety in his presence.

According to relator, when Crispin and Sonia traveled to Florida in August 2020, Crispin was very angry, yelled, and physically prevented relator and A.N.G. from entering their apartment. On this occasion, Crispin asked A.N.G. "why she was doing this to him, referring to the lawsuit and was asking her why she didn't want to go to Texas with him." She averred that the confrontation only ended when the police arrived. She testified that A.N.G. was very disturbed by the incident and discussed it with her guidance counselor at school. Relator testified that A.N.G. had "an emotional breakdown during school because she was afraid that [Crispin] and [Sonia] would come and get her from school."

Relator further provided numerous records regarding A.N.G.'s education, extracurricular activities, and health care in Florida. She provided images of the texts with Serrano's girlfriend regarding A.N.G. She also provided several affidavits in support of her claims:

- Audrey C. Barr, relator's mother, testified as to the temporary nature of A.N.G.'s visit to Texas, relator's deep and loving relationship with A.N.G., and Crispin's engagement in domestic violence.

- Courtney Colquhoun, whose friendship with relator spanned twenty-five years, averred that Crispin "drank very heavily and at times was emotionally and physically abusive toward [relator]," and that she would be able to testify in Florida, but not Texas.

- Chelsea Kaley, one of relator's friends, testified positively in support of relator's parenting skills, that A.N.G.'s visit to Texas negatively affected her demeanor, and that she would be able to testify in Florida, but not Texas.

- Kayle Tweedale, relator's cousin, testified regarding their extensive family in Florida, that A.N.G. told her that she did not see Crispin daily but rather stayed at various relatives' homes while in Texas, and that she would be able to testify in Florida, but not Texas.

- Rebecca Davenport, the program director for Hope Therapy in Florida, testified that relator had volunteered with the program, which is a horse-based therapy program for children and adults with special needs. Davenport testified that relator demonstrated her love and dedication to A.N.G., was a good role model and was a "caring, hard-working, and [] giving mother." She also testified that she would be able to testify in Florida, but not Texas.

- Paige Burke, relator's cousin, testified that relator made efforts to ensure that A.N.G. was "around family since it's an important part of her values." She testified that relator's family offered A.N.G. a strong support system. She testified that she

could offer "critical" testimony regarding A.N.G.'s well-being and best interests, and she would not have the option to do so if the case were litigated in Texas.

- Irene Minschke, relator's grandmother, testified that relator and A.N.G. had visited her numerous times and that they have a strong support system in Florida.

- Dana Bradley, a friend of relator, testified extensively about relator's strong parenting skills, the temporary nature of A.N.G.'s visit to Texas, Crispin's infidelity and abusive relationship, and that she would be unable to testify in Texas.

On September 24, 2020, Sonia filed a "Response to [Relator's] Brief in Support of Declining Jurisdiction based on Forum Non Conveniens." Sonia argued that relator left A.N.G. with Sonia "in the summer of 2019 for nearly a year [because relator] was having emotional/mental issues which affected her ability to care for the child as testified to on May 29, 2020 at the hearing on Temporary Orders."[5] Sonia asserted that the § 152.207 factors under the family code demonstrated that Texas was not an inconvenient forum for the case. She argued that "no domestic violence has occurred and is not likely to continue," although she acknowledged that relator offered contrary evidence. She asserted that relator's allegations that she did not receive child support were incorrect and that Crispin had paid $26,125 in child support and had paid for additional items such as clothing and transportation. She argued that it would not be a burden to litigate in Texas because the court had used Zoom to conduct all hearings to date, and this would

---

[5] The record before this Court does not contain a transcript of this hearing. We note that relator has provided an affidavit in her mandamus record expressly stating that the trial court did not consider testimony in its consideration of relator's contentions regarding forum non conveniens. *See* TEX. R. APP. P. 52.7(a)(2) (requiring the relator to file "a properly authenticated transcript of any relevant testimony from any underlying proceeding, including any exhibits offered into evidence, or a statement that no testimony was adduced in connection with the matter complained"); *id.* R. 52.7(b) (allowing any party to file additional materials for inclusion in the record).

eliminate any costs of travel. Sonia further argued that relator was represented by counsel in both pending lawsuits.

Sonia's pleading was not verified and was supported only by Crispin's affidavit. Crispin testified that he was "physically present during the most crucial milestones" of A.N.G.'s life and continued to be a part of her life emotionally and financially. He testified he had faithful contact with her and had exercised physical possession during the summer and holidays when relator allowed it and that he had visited A.N.G. on additional occasions. He conceded he "may not have been physically present on a daily basis these past years of her life"; however, he said he had built a strong relationship with A.N.G. According to Crispin, during the past year, he spent time with A.N.G. on his days off from work and reimbursed Sonia for expenses regarding afterschool and extracurricular activities. He stated that he had a strong father-daughter bond with A.N.G. and he was grateful for their strong family support system. He testified that he or his family had paid all A.N.G.'s travel expenses to and from Texas and had also paid for both relator and A.N.G.'s flights for one Texas trip. Crispin further testified that he had also provided other direct monetary payments to relator and Sonia for his daughter. He supported his affidavit with a Navy Federal Credit Union report reflecting numerous payments from his account.

On October 8, 2020, relator filed a "Response to [Sonia's] Reply Brief." She asserted, inter alia, that Sonia's arguments did not address the statutory factors regarding the appropriateness of Texas as a forum.

On October 14, 2020, the trial court signed an order denying relator's request to decline jurisdiction over the case.

13

On October 22, 2020, Sonia filed a "Motion for Expedited Status Hearing for Setting Remedy and Entry of Order on Motion for Enforcement of Possession and Access." According to Sonia's motion, the trial court signed an order on July 1, 2020, which: (1) gave relator possession of A.N.G. beginning on May 29, 2020, and ending July 24, 2020; (2) gave Crispin possession of A.N.G. in accordance with his work schedule (fourteen days on and fourteen days off); and (3) gave Sonia possession of A.N.G. "at all other times not specifically designated." Sonia's motion states that relator failed to return A.N.G. to her on July 24, 2020, so Sonia and Crispin traveled to Florida to pick up A.N.G., but relator refused to transfer possession of A.N.G. The motion states that Sonia had previously filed a motion for enforcement by contempt on August 12, 2020, and a hearing was held on September 9, 2020, resulting in a court order requiring relator to return A.N.G. to Texas by September 13, 2020. Sonia asked the trial court to enter another order requiring A.N.G. to be returned to Texas. On October 28, 2020, the trial court clerk sent an email to the parties setting "these motions" for hearing on November 4, 2020.

On November 2, 2020, relator filed objections to Sonia's motion for enforcement. Relator alleged that she had insufficient notice of the hearing set on the motion for enforcement and had insufficient time to prepare a response. She specifically asserted that she was not properly served with the motion or with proper notice of hearing.

On November 4, 2020, the trial court signed an "Order on Motion for Enforcement of Possession and Access." This order states that both relator and her attorney appeared and announced ready on September 9, 2020, on Sonia's motion for enforcement. The order states that Sonia was entitled to immediate physical custody of A.N.G. "pursuant to

14

the child custody determination issued by the Kleberg County Court at Law." The order requires relator to transfer physical custody "on or before September 13, 2020 [sic]."

On November 5, 2020, the trial court signed a separate "Order Directing [Relator] to Return Child." This order required relator to return the child to Sonia on November 8, 2020. According to relator, the trial court based its orders on the papers on file and the arguments of counsel and no testimony was received "in connection with the issue regarding [Sonia's] motion for enforcement." *See* TEX. R. APP. P. 52.7(a)(2).

This original proceeding ensued. By three issues, relator asserts that: (1) the trial court abused its discretion by refusing to decline jurisdiction in favor of an appropriate forum "where all evidence and information demonstrated that Texas is an inconvenient forum," (2) the trial court erred by failing to provide the required notice on a motion for enforcement and by subsequently granting that motion over relator's objection, and (3) relator lacks an adequate remedy by appeal. Relator further filed a motion for emergency stay.

This Court granted relator's motion for emergency stay and ordered the trial court proceedings stayed. *See* TEX. R. APP. P. 52.10. We requested that the real parties in interest, Sonia and Crispin, or any others whose interest might be affected by the relief sought, file a response to the petition for writ of mandamus. *See id*. R. 52.2, 52.4, 52.8. Sonia filed a response to the petition for writ of mandamus in which she asserts generally that the trial court did not err in making either ruling.

## II. STANDARD OF REVIEW

Mandamus is both an extraordinary remedy and a discretionary one. *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018) (orig. proceeding) (per curiam). For mandamus to

issue, the relator must show that the trial court abused its discretion and that no adequate appellate remedy exists to cure the error. *In re N. Cypress Med. Ctr. Operating Co.*, 559 S.W.3d 128, 130 (Tex. 2018) (orig. proceeding); *In re Christus Santa Rosa Health Sys.*, 492 S.W.3d 276, 279 (Tex. 2016) (orig. proceeding). The relator bears the burden of proving both requirements. *In re H.E.B. Grocery Co.*, 492 S.W.3d 300, 302 (Tex. 2016) (orig. proceeding) (per curiam); *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding).

### III.   INCONVENIENT FORUM

In her first issue, relator asserts that the trial court abused its discretion in concluding that Texas is not an inconvenient forum under the family code. Sonia contends otherwise.

A Texas court that has jurisdiction over a child custody proceeding may decline to exercise its jurisdiction if "it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum." TEX. FAM. CODE ANN. § 152.207(a); *see In re C.H.*, 595 S.W.3d 272, 275–76 (Tex. App.—Amarillo 2019, no pet.); *Lesem v. Mouradian*, 445 S.W.3d 366, 372 (Tex. App.—Houston [1st Dist.] 2013, no pet.). In conducting this analysis, the court must consider whether it is appropriate for the court of another state to exercise jurisdiction. TEX. FAM. CODE ANN. § 152.207(b); *In re C.H.*, 595 S.W.3d at 275–76; *Lesem*, 445 S.W.3d at 372. The family code expressly provides that, in making this determination, the court "shall consider all relevant factors, including" the following:

> (1)   whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

16

> (2)    the length of time the child has resided outside this state;
>
> (3)    the distance between the court in this state and the court in the state that would assume jurisdiction;
>
> (4)    the relative financial circumstances of the parties;
>
> (5)    any agreement of the parties as to which state should assume jurisdiction;
>
> (6)    the nature and location of the evidence required to resolve the pending litigation, including testimony of the child;
>
> (7)    the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and
>
> (8)    the familiarity of the court of each state with the facts and issues in the pending litigation.

TEX. FAM. CODE ANN. § 152.207(b). The eight factors identified in § 152.207(b) are not exclusive. *In re Meekins*, 550 S.W.3d 729, 742 (Tex. App.—Houston [1st Dist.] 2018, orig. proceeding); *In re T.B.*, 497 S.W.3d 640, 646 (Tex. App.—Fort Worth 2016, pet. denied). We review a trial court's decision regarding this issue for abuse of discretion. *In re C.H.*, 595 S.W.3d at 276. We examine each of the foregoing statutory factors considering the record evidence.

## A.    Domestic Violence

The family code directs us to consider "whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child." TEX. FAM. CODE ANN. § 152.207(b)(1). Relator testified that "there were several instances of family violence and domestic abuse" committed against her by Crispin. She stated that Crispin committed emotional abuse and physical violence against her and

17

that he "gets very violent, especially when he drinks." She described an incident when he pushed her against a wall and began choking her. She testified he became increasingly violent, with more physical abuse, and that on several occasions he hit her with objects, including lamps and phones. She testified that she recalled at least five separate physical attacks, and she "was afraid for [her] safety and the safety of [her] daughter." She testified she had limited contact with Crispin after leaving Virginia but still feared for her safety in his presence and described that she was fearful for their safety as recently as August 2020 when Crispin and Sonia traveled to Florida. Barr provided additional affidavit testimony regarding Crispin's domestic violence, and Colquhoun also testified that Crispin "drank very heavily and at times was emotionally and physically abusive toward [relator]."

In contrast, Sonia baldly asserts that "[d]omestic violence has not occurred and is not likely to occur in the future." She criticizes relator for failing to raise this issue earlier, argues that relator called the police during their Florida encounter, argues that the "police officers were familiar with [r]elator due to numerous incidents involving other men and disturbances," and criticizes relator for "mental instability." However, Sonia does not direct us to any evidence before the trial court which would support any of these assertions.[6] The allegations made in her trial court pleadings regarding forum non conveniens were not verified, and Crispin's affidavit did not address the issue of

---

[6] Sonia argues that some of these matters were established by testimony at an earlier hearing on temporary orders; however, she has not provided a record in support of this assertion. . See TEX. R. APP. P. 52.7(b) (providing that any party to an original proceeding "may file additional materials for inclusion in the record").

18

domestic violence. We conclude that this factor weighs against Texas as a convenient forum.

## B.      Residence Outside the State

The family code provides that we consider the length of time the child has resided outside this state. *Id.* § 152.207(b)(2). Here, the evidence indicates that A.N.G. resided in Virginia with relator from the date of A.N.G.'s birth, November 20, 2012, to April 2015, when they moved to Florida. She resided in Florida from April 2015 until 2018 or 2019, when she visited Texas for an indeterminate period, and she again resided in Florida from May 2020 until the present. Thus, A.N.G. has spent most of her life in other states.

Sonia cites *Lesem* in support of her contention that A.N.G.'s residence outside of Texas is not significant in our analysis, and argues that, in that case, the First District Court of Appeals found that Florida was a more convenient forum even though the child there had resided in Texas for eleven years and in Florida for only sixteen months. 445 S.W.3d at 374–75. However, in *Lesem*, the court considered the entirety of the statutory factors in determining that Texas was an inconvenient forum for suit, and it did not separately address the child's time spent outside the state. *See id.* Considering this statutory factor alone, we conclude that this factor weighs against Texas as a convenient forum.

## C.      Distance

Section 152.207 states that we must consider "the distance between the court in this state and the court in the state that would assume jurisdiction." TEX. FAM. CODE ANN. § 152.207(b)(3). The distance between Kleberg County, Texas and Jacksonville, Florida is not insubstantial. *See id.*; *see also Baggs v. Becker*, No. 03-07-00731-CV, 2009 WL

19

280664, at *3 (Tex. App.—Austin Feb. 6, 2009, pet. denied) (mem. op.) (concluding that the trial court was not unreasonable in determining that the distance between Texas and Florida weighed toward finding that Texas was an inconvenient forum). Relator and each of her witnesses testified that they would be unable to travel to Texas to provide testimony in this case due to time and expense constraints.

Sonia asserts that "there are [an] equal number of witness[es] located in Texas as in Florida"; however, she does not identify these witnesses or point to any evidence in support of this argument. Sonia also argues that the use of video conferencing through the Zoom Communications, Inc. application would eliminate any hardship caused by the distance between the two states. However, Sonia's argument regarding the potential use of remote video conferencing requires speculation as to its future use in this case, and we decline to engage in such a hypothetical analysis. More saliently, the statutory factor pertaining to distance between the forums does not contemplate the possibility of remote proceedings. *See* TEX. FAM. CODE ANN. § 152.207(b)(3). We determine that this factor weighs against Texas as a convenient forum.

### D.     Financial Circumstances

The statute directs us to consider "the relative financial circumstances of the parties." *Id.* § 152.207(b)(4). Relator testified that she was unemployed and litigation in Texas would be an undue financial burden, whereas Crispin was "well paid" as an employee in the oil and gas industry and was also working as a personal trainer. Sonia argues that relator has retained counsel in Florida and Texas, that relator has not had to travel to Texas for any hearings that have occurred to date, and that the "setting of a jury trial in Texas at some point in the distant future will afford [relator] plenty of time to

20

plan and arrange her travel schedule." Sonia does not directly address the financial circumstances of the parties and offers no evidence or testimony that relator's financial situation is other than as relator represents. This factor weighs against Texas as a convenient forum.

**E. Agreement**

Under the family code, we consider whether there is "any agreement of the parties as to which state should assume jurisdiction." *Id.* § 152.207(b)(5). The record is devoid of evidence regarding an agreement of this sort; however, relator testified that the parties agreed that A.N.G.'s presence in Texas was intended to be temporary, rather than permanent. We conclude that this factor weighs slightly against Texas as a convenient forum.

**F. Evidence**

Section 152.207 provides that we consider "the nature and location of the evidence required to resolve the pending litigation, including testimony of the child." *Id.* § 152.207(b)(6). Relator contends she resides in Florida with A.N.G. and that her witnesses and documentary evidence are located exclusively in Florida. Sonia has not offered evidence to the contrary. Further, Sonia has not offered evidence that any potential Texas witnesses would be unable to travel to Florida. We determine that this factor weighs against Texas as a convenient forum.

**G. Ability of Courts**

Under the statute, we consider "the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence." *Id.* § 152.207(b)(7). According to the record, there is a pending case in Florida regarding

21

paternity, possession, and custody of A.N.G., and Crispin has made an appearance there. Relator provided testimony that Crispin is actively litigating the Florida lawsuit, and there has been "considerable" litigation in that proceeding. *See id.* § 152.207(b)(8). Sonia does not directly address this factor in her arguments. The record contains no other evidence regarding the relative ability of the Florida and Texas courts to manage this lawsuit. We conclude that this factor weighs against Texas as a convenient forum.

## H. Familiarity of Each Court

Under the final factor, we consider "the familiarity of the court of each state with the facts and issues in the pending litigation." *Id.* § 152.207(b)(8). Relator offered testimony that the Florida court has "extensive" knowledge with respect to the parties and issues in dispute. In contrast, Sonia asserts that the presiding judge from Florida was present at a Texas status hearing in September 2020 "and acknowledged that [the] Texas court had great familiarity with the issues presented in the litigation." Sonia did not provide a reporter's record or other evidence in favor of this assertion.[7] The record is bereft of any evidence on this issue other than relator's testimony. We conclude that this factor weighs against Texas as a convenient forum.

---

[7] Section 152.110 of the family code governs communication between courts. *See* TEX. FAM. CODE ANN. § 152.110. It allows a Texas court to communicate with a court of another state concerning a proceeding arising under the UCCJEA. *See id*. § 152.110(b). Parties may participate in the inter-court communication, but if not, they must be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made. *Id*. § 152.110(c). Communication on administrative matters such as schedules, calendars, and court records can occur without informing the parties, and in such cases, a record need not be made of the communication. *Id*. § 152.110(e). However, in other cases, "a record must be made of any communication under this section." *Id*. § 152.110(f). It is unclear from the record whether such a recording was made in compliance with the statute; however, Sonia did not provide us with such a record, and relator does not assert error in this regard.

## I.      Conclusion

We conclude that an analysis of the statutory factors in conjunction with the record evidence establishes that Texas is an inconvenient forum for suit and, in fact, none of the factors suggest otherwise. *See Lesem*, 445 S.W.3d at 375 (concluding that a forum was inconvenient after considering the evidence and the statutory factors); *Monk v. Pomberg*, 263 S.W.3d 199, 211 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (holding that evidence supported an inconvenient forum finding where the child lived, had extensive family connections, attended school, participated in extracurricular activities, and received psychiatric treatment in Iowa).

We recognize that a reviewing court cannot substitute its discretion for that of the trial court, and to find an abuse when factual matters are at issue, the reviewing court must conclude that the facts and circumstances of the case extinguish any choice in the matter. *In re Mahindra, USA Inc.*, 549 S.W.3d 541, 550 (Tex. 2018) (orig. proceeding). However, based on the evidence before it, the trial court could reasonably have reached only one conclusion—that Texas was not a convenient forum for suit. *See id.* We therefore sustain relator's first issue.

## IV.      SERVICE

Relator argues by her second issue that she failed to receive the required statutory notice of hearing for Sonia's "Motion for Expedited Status Hearing for Setting Remedy and Entry of Order on Motion for Enforcement of Possession and Access" filed on October 22, 2020 and set for hearing on November 4, 2020. She thus asserts that the trial court erred in granting that motion over relator's objection. Relator asserts that she was not personally served with notice, she was not provided with ten days of notice

23

of the hearing, and she properly objected to proceeding without the required notice. The record indicates that relator's counsel was notified of the November 4, 2020 hearing by email on October 28, 2020.

In contrast, Sonia asserts that the trial court did not commit error because the November 4, 2020 hearing pertained to Sonia's first motion to enforce, originally heard on September 9, 2020, and the trial court did not entertain or rule on her second motion to enforce, filed on October 22, 2020. According to Sonia, the trial court had signed an order requiring relator to return A.N.G. to Sonia by September 13, 2020, but that order was stayed pending the trial court's resolution of the forum non conveniens issues. According to Sonia, the court's November orders merely gave the relator a new date and time to return A.N.G., as originally ordered, and did not consider arguments, testimony, or evidence regarding Sonia's second enforcement motion.

Section 157.062 of the family code governs the required notice for enforcement hearings in suits affecting the parent-child relationship. This section provides;

    (a)    The notice of hearing must include the date, time, and place of the hearing.

    (b)    The notice of hearing need not repeat the allegations contained in the motion for enforcement.

    (c)    Notice of hearing on a motion for enforcement of a final order providing for child support or possession of or access to a child, any provision of a final order rendered against a party who has already appeared in a suit under this title, or any provision of a temporary order shall be given to the respondent by personal service of a copy of the motion and notice not later than the 10th day before the date of the hearing. For purposes of this subsection, "temporary order" includes a temporary restraining order, standing order, injunction, and any other temporary order rendered by a court.

    (d)    If a motion for enforcement of a final order, other than a final order

24

rendered against a party who has already appeared in a suit under this title, is joined with another claim:

(1)     the hearing may not be held before 10 a.m. on the first Monday after the 20th day after the date of service; and

(2)     the provisions of the Texas Rules of Civil Procedure applicable to the filing of an original lawsuit apply.

TEX. FAM. CODE ANN. § 157.062. Thus, under § 157.062, if a motion for enforcement of an order is joined with another claim, the Texas Rules of Civil Procedure applicable to the filing of an original lawsuit apply and a hearing may not be "held before 10 a.m. on the first Monday after the 20th day after the date of service"; and separately, if the motion for enforcement is not joined with another claim, § 157.062 requires only that a respondent be personally served with a copy of the motion and notice "not later than the 10th day before the date of the hearing." *Id.* § 157.062 (c), (d); *see In re Hathcox*, 981 S.W.2d 422, 425 (Tex. App.—Texarkana 1998, orig. proceeding); *see also Ladd-Keller v. Ladd*, No. 14-15-00758-CV, 2017 WL 830545, at *2 (Tex. App.—Houston [14th Dist.] Feb. 28, 2017, no pet.) (mem. op.).

In construing the predecessor statute, the Texas Supreme Court held that holding a hearing without the statutory notice "may constitute a denial of due process." *Ex parte Davis*, 344 S.W.2d 153, 155 (Tex. 1961) (orig. proceeding). The supreme court stated that the notice provision was couched in "mandatory language" and its "obvious purpose" was to allow the responding party a "reasonable opportunity to employ counsel, gather evidence, subpoena witnesses[,] and prepare for trial." *Id.* Courts following *Davis* have thus held that the lack of the requisite notice under § 157.062 results in a void order when it "constitutes a denial of a party's due process rights." *Target Logistics, Inc. v. Office of*

25

*Attorney Gen. of Tex.*, 465 S.W.3d 768, 770 (Tex. App.—El Paso 2015, no pet.); *see In re Aguilera*, 37 S.W.3d 43, 53 (Tex. App.—El Paso 2000, orig. proceeding) (same); *Platt v. Platt*, 991 S.W.2d 481, 483 (Tex. App.—Tyler 1999, no pet.) (stating that the "trial court's failure to comply with the rules of notice in a contested case deprives a party of the constitutional right to be present at the hearing, to voice [her] objections in an appropriate manner, and results in a violation of fundamental due process"); *In re Hathcox*, 981 S.W.2d at 425 (holding that the notice required by this section applies to both original and amended motions for enforcement and thus vacating a default judgment for lack of notice); *see also In re Chambers*, No. 05-18-00031-CV, 2018 WL 833382, at *2 (Tex. App.—Dallas Feb. 12, 2018, orig. proceeding) (mem. op.) ("Lack of ten days' notice under [§] 157.062(c) constitutes a deprival of due process rights and renders the order void."); *In re A.L.R.*, No. 10-07-00037-CV, 2008 WL 3971762, at *2 (Tex. App.—Waco Aug. 27, 2008, no pet.) (mem. op.) ("A trial court's failure to comply with the rules of notice in a contested case deprives a party of the constitutional right to be present at the hearing, to voice her objections in an appropriate manner, and results in a violation of fundamental due process."). In determining whether the failure to give the required notice amounts to a denial of constitutional due process, "[e]ach case must be judged upon its own facts." *Ex parte Sturdivant*, 544 S.W.2d 512, 513–14 (Tex. App.—Texarkana 1976, orig. proceeding); *see, e.g.*, *Ex parte Waldrep*, 783 S.W.2d 332, 334 (Tex. App.—Houston [14th Dist.] 1990, orig. proceeding) (holding that the relator was not denied due process for improper notice where he did not object, appeared, and presented testimony, and there was no indication that the lack of notice "had an adverse effect on the relator's ability to protect his interests or defend himself"); *Shockome v. Shockome*, No. 04-11-00887-

26

CV, 2013 WL 3871056, at *2 (Tex. App.—San Antonio July 24, 2013, no pet.) (mem. op.) (concluding that where proper statutory notice was given for an initial hearing, notice of a subsequent resetting of the hearing was governed by TEX. R. CIV. P. 245, requiring only reasonable notice, where the objecting party appeared at the original setting and agreed to have the hearing reset); *In re V.L.K.*, No. 02-10-00315-CV, 2011 WL 3211245, at *4 (Tex. App.—Fort Worth July 28, 2011, no pet.) (mem. op.) (concluding that the trial court possessed jurisdiction and there was not a due process violation for failing to give the required notice where the objecting party appeared with counsel and "testified extensively").

We reject Sonia's arguments that statutory notice was not required because the November 4, 2020 hearing did not pertain to her second motion to enforce. The record indicates that the trial court issued two orders. On November 4, 2020, the trial court signed an "Order on Motion for Enforcement of Possession and Access" which states, essentially, that it is based on a September 9, 2020 hearing on Sonia's motion for enforcement. On November 5, 2020, the trial court signed an "Order Directing [Relator] to Return Child," and this order expressly references the trial court's hearing held on November 4, 2020 on Sonia's second motion for enforcement—her "Motion for Expedited Status Hearing for Setting Remedy." The November 5, 2020 order states that Sonia is "the person entitled by law to possession" of A.N.G. and that Sonia was entitled to "immediate physical custody" of A.N.G. This order required relator to return A.N.G. to Sonia by a specific time on November 8, 2020. Thus, the order on its face and by its clear terms establishes that the November 4, 2020 hearing was held on Sonia's second motion to enforce.

27

There is no dispute that relator did not receive the statutorily required notice of a hearing on Sonia's second motion for enforcement. Similarly, there is no dispute that relator objected to proceeding without the requisite notice. She expressly informed the trial court that she had insufficient notice of the hearing and had insufficient time to prepare and respond to Sonia's motion to enforce. She did not testify or present evidence. In her petition for writ of mandamus, relator argues that she was unable to file responsive pleadings and objections or present evidence at the hearing. The record indicates that the lack of appropriate notice had an adverse effect on relator's ability to protect her interests and defend herself and therefore deprived her of due process. *See Target Logistics, Inc.*, 465 S.W.3d at 770; *In re Aguilera*, 37 S.W.3d at 53; *Platt*, 991 S.W.2d at 483. Accordingly, we conclude that the trial court erred in failing to provide proper notice of the enforcement hearing under the family code. We sustain relator's second issue.

## V. REMEDY BY APPEAL

In her third issue, relator asserts that she lacks an adequate remedy by appeal to address the trial court's errors. Sonia does not assail this element of mandamus relief. We agree with relator.

Mandamus may issue for the failure to provide appropriate notice of a hearing given the deprival of due process rights. *See In re Chester*, 357 S.W.3d 103, 107 (Tex. App.—San Antonio 2011, orig. proceeding). Mandamus may also issue when a trial court fails to comply with the jurisdictional requirements of the UCCJEA. *See Powell v. Stover*, 165 S.W.3d 322, 324 (Tex. 2005) (orig. proceeding); *In re Meekins*, 550 S.W.3d at 739; *In re Alanis*, 350 S.W.3d 322, 328 (Tex. App.—San Antonio 2011, orig.

28

proceeding); *see also In re Watt*, No. 05-19-01291-CV, 2020 WL 830990, at *1 (Tex. App.—Dallas Feb. 20, 2020, orig. proceeding) (mem. op.).

Considering the specific facts and circumstances of this case, we conclude that any appellate remedy for the trial court's errors would be inadequate and the benefits of mandamus review outweigh the detriments. *See In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 464 (Tex. 2008) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding). In this regard, we note that neither of the trial court's rulings at issue here are subject to interlocutory appeal, and an appellate remedy after final judgment would be illusory given the due process violation and improper forum. Accordingly, we sustain relator's third issue.

## VI.  CONCLUSION

The Court, having examined and fully considered the petition for writ of mandamus, the response, and the applicable law, is of the opinion that the relator has met her burden to obtain relief. Accordingly, we lift the stay previously imposed in this case. We conditionally grant the petition for writ of mandamus. We direct the trial court to vacate its October 14, 2020 order retaining jurisdiction over the case and to issue an order regarding forum non conveniens in accordance with this opinion. We further direct the trial court to vacate its November 5, 2020 enforcement order for lack of due process. Our writ will issue only if the trial court fails to promptly comply with our directives.

NORA L. LONGORIA
Justice

Delivered and filed on the
7th day of May, 2021.

29